# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY EUGENE SMALLING, | 1: 11-cv-01064-BAM |
| Plaintiff, | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.   INTRODUCTION

Pending before the Court is plaintiff Jeffrey Eugene Smalling's ("Plaintiff") motion for summary judgment and the cross-motion for summary judgment of defendant Commissioner of Social Security ("Commissioner").  Plaintiff seeks judicial review of an administrative decision denying his claim for Supplemental Security Income disability benefits pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff filed his complaint on June 24, 2011.  (Doc. 1.)  Plaintiff filed his summary judgment motion on January 23, 2012.  ( Doc. 14.)   The Commissioner filed his summary judgment cross-motion and opposition on March 19, 2012.  (Doc. 18.)  Plaintiff filed his Reply Brief on March 27, 2012.  (Doc. 19.)  Both parties have consented to conduct all proceedings before the assigned United States Magistrate Judge.  (Doc. 4, 11.)  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to United States

1

Magistrate Judge Barbara A. McAuliffe.  Having considered the administrative record and the parties' briefs, the Court issues the following order.

## II.   BACKGROUND

**A.   Overview of Administrative Proceedings**

On July 23, 2007, Plaintiff applied for Disability Insurance Benefits pursuant to Title XVI of the Social Security Act (the "Act"). (Administrative Record, "AR," at 59-74.)  Plaintiff's application was denied on initial review and again on reconsideration.  *Id.*  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (the "ALJ").  On January 25, 2010, Plaintiff appeared with counsel and testified before the ALJ.  (AR at 30-58.)  In a decision dated February 11, 2010, the ALJ found that Plaintiff was not disabled under the Act.  (AR at 9-28.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  (AR at 1-6.)  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

**B.   Medical History**

The entire medical record was reviewed by the Court.  (AR at 211-477.)  The Court will refer to the medical evidence to the extent it is necessary to the Court's decision.

**C.   Testimony Presented At the Administrative Hearing**

Plaintiff was born on February 14, 1965.  (AR at 35.)  Plaintiff completed a twelfth grade education and currently lives with his son, who provides financial assistance.  (AR at 35, 49.)  Plaintiff has not worked since some time in 1993 or 1994. (AR at 35.)  Plaintiff's last employment activity was as a maintenance worker at a church.  (AR at 35.)  Prior to that, Plaintiff worked as a forklift operator in a packing house.  *Id.*

Regarding his impairments, Plaintiff testified that his diabetes was "out of control," causing numbness in his hands and feet.  (AR at 37.)  Plaintiff reported depression, social phobia, hip and knee pain, and muscle spasms in his back and neck. (AR at 37, 39, 47.) Plaintiff testified that he was taking medications that were "helpful to an extent," but resulted in side effects, including vomiting, slow movement, roaring in his head, twitching muscles, and sleeping for extended durations. (AR at 37, 42, 49.)

Additionally, Plaintiff testified that he could lift 10 pounds, but dropped objects due to weakness in his hands. (AR 43.)  Plaintiff reported a capacity to stand 30 minutes at a time, sit 30 minutes at a time, and walk a couple of blocks before needing to sit down. (AR at 43-44.) Plaintiff stated that he used a cane for walking when in "unknown territory," but admitted that a doctor never prescribed him the cane. (AR at 38, 44.)  Plaintiff also testified that he needed to lay down or recline 2-3 hours in an 8-hour period. (AR at 45.)

**D.    ALJ Findings**

The ALJ determined that Plaintiff was not disabled within the meaning of the Act. Specifically, the ALJ found that:

1. Plaintiff has the following severe impairments: neuropathy, diabetes mellitus, degenerative disc disease, right hip bursitis, depressive disorder and obesity;

2. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

3. Plaintiff has the following residual functional capacity: Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently; Plaintiff can sit, stand and walk 6 hours in an 8 hour workday; Plaintiff can perform simple repetitive tasks; maintain attention, concentration, persistence and pace; relate to and interact with others; adapt to usual changes in work settings; and adhere to safety rules;

4. Plaintiff is unable to perform any past relevant work;

5. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

6. Plaintiff has not been under a disability, as defined in the Social Security Act, since July 23, 2007, the date the application was filed.

(AR at 14-22.)

/././

### III. DISCUSSION

**A. Standard of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff argues the ALJ erred for the following reasons: (1) The ALJ failed to discuss the opinions of state agency physician, Dr. Roger Fast; (2) The ALJ erred in failing to adopt the opinion of treating physician, Dr. S.N. Shubhaker; (3) the ALJ failed to adopt all of the limitations recommended by examining physician, Dr. Vinay Buttan; (4) the ALJ failed to adopt the opinions

of Plaintiff's treating psychologist, Dr. Abordo; and (5) the ALJ erred in Plaintiff's credibility determination.

**B.     The ALJ's Medical Opinion Testimony Evaluation**

   **1.     Legal Standard**

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir.2001); *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians"); *See also,* 20 C.F.R. § 404.1527(c)(1)-(2).  If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Id.* § 404.1527(c)(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id.* § 404.1527(c)(2)(i)-(ii). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6).

The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990).  If contradicted by another doctor, the opinion of a treating or examining doctor can

only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). "This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof." *Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a treating physician, or any other medical source, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart,* 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir.1999)

**2.    The ALJ's Evaluation of Medical Opinion Testimony Relating To Plaintiff's Physical Ailments**

The ALJ considered medical opinion testimony concerning Plaintiff's physical ailments from the following sources: (1) Plaintiff's treating physician, Dr. Shubhaker; (2) state agency examining physician, Dr. Buttan; (3) state agency reviewing physician, Dr. Fast; and (4) state agency reviewing physician, Dr. Wong.

Dr. Stubhaker treated Plaintiff from February 2009 to December 2009. (AR at 473.) The ALJ's evaluation of Dr. Stubhaker's medical opinion testimony is summarized as follows:

> [Dr. Stubhaker] diagnosed the claimant with diabetes, high blood pressure and congestive heart failure and depression and noted no significant side effects of medications which might interfere with work. [Dr. Stubhaker] opined that the claimant could lift and/or carry 50 pounds occasionally and 10 pounds frequently, sit, stand, and/or walk 2 hours in an 8 hour workday; cannot move his head; rarely twist, stoop, crouch or climb stairs; cannot climb ladders; and can repetitively manipulate 25% of the time. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with

6

> other substantial evidence in the case record. [citation.] Dr. Stubhaker's opinion is not consistent with medical evidence of record and seems to rely solely on the claimant's subjective complaints. According, I give his opinion little weight.

AR at 19 (citations omitted).

On October 15, 2007, Plaintiff underwent an internal medicine consultative examination by Dr. Vinay Buttan. (AR at 223-225.) The ALJ's evaluation of Dr. Buttan's medical opinion testimony is summarized as follows:

> On physical examination, he opined that the claimant is obese, weighing 292 pounds at 5'11" tall, with normal gait without use of an assistive device. Dr. Buttan opined that the claimant reported pain in his right knee, and he was almost able to touch his toes though he complained of pain to his low back. Dr. Buttan diagnosed the claimant with diabetes mellitus with peripheral diabetic neuropathy, hypertension, obesity, and generalized osteoarthritis especially of the right hip and right knee. He further opined that losing weight would help the claimant's joint pain and noted that the claimant reported his diabetes and hypertension were controlled. Dr. Buttan concluded that the claimant could lift and/or carry 10 pounds occasionally and 10 pounds frequently, sit 5 to 6 hours and stand and/or walk for 4 to 5 hours of a normal eight hour workday with normal breaks, with some postural limitations. I accord great weight to his assessment based on physical examination but gave little weight to his conclusion that the claimant is limited to light work because his opinion regarding the extent of the claimant's physical limitations is not supported by the record overall.

AR at 19-20 (citations omitted).

The medical records also indicate that Dr. Buttan observed tenderness in both of Plaintiff's knees, and that while Plaintiff's range of motion was normal, the testing was particularly painful on his right knee. (AR at 224.) Dr. Buttan also observed tenderness in both of Plaintiff's hips, shoulders, hands, as well as in the lumbosacral spine. Dr. Buttan concluded that Plaintiff could not "do work involving repetitive bending, squatting, climbing, crawling, or kneeling, but he should be able to work with his hands like manipulate small tools or instruments or work on the computer or typewriter keyboard." (AR at 224-225.)

The ALJ also referred to the opinions of the State agency medical consultants who provided residual functional capacity assessments at the initial and reconsideration levels. (AR at 20.) On January 23, 2008, state agency physician Dr. Ernest Wong reviewed's medical records. Dr. Wong disagreed with Dr. Buttan's assessment of Plaintiff's limitations, stating they were not supported by the "mild objective findings," and were based on Plaintiff's subjective complaints. Dr. Wong suggested a light residual functional capacity assessment. (AR at 233.)

1        On August 22, 2008, state agency physician Dr. R. Fast reviewed Plaintiff's medical records, and largely agreed with Dr. Buttan's conclusions. (AR at 354.) Dr. Fast diagnosed Plaintiff with morbid obesity, lumbar disc disease, osteoarthritis in his right knee and right hip, and a pulmonary embolism. (AR at 350.) Additionally, Dr. Fast opined that Plaintiff could lift no more than 10 pounds occasionally or frequently, stand 2 hours in an eight hour workday, and sit six hours in an eight hour work day. (AR at 351.) Dr. Fast also opined Plaintiff would have frequent to occasional postural limitations. *Id.* Dr. Fast suggested a sedentary residual functional capacity finding. (AR at 356.)

        The ALJ made several errors evaluating medical opinion testimony concerning Plaintiff's physical ailments which require remand. First, the ALJ failed to provide specific and legitimate reasons based on substantial evidence in the record to discount Dr. Stubhaker's and Dr. Buttan's testimony. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). In rejecting the conclusions of these two physicians, the only reason provided by the ALJ was that these opinions were inconsistent with medical evidence and based solely on Plaintiff's subjective complaints. In evaluating Plaintiff's subjective symptom testimony, the ALJ noted the following:

> The records also document the claimant's degenerative disc disease; however, radiology findings were generally mild. X-ray of the lumbosacral spine dated July 28, 2006 revealed a decreased intervertebral disk space at the L5-S1 level and osteoarthritic change of the lumbosacral spine. On that same date, X-rays of the right knee revealed no acute fractures or dislocations and mild osteothritic [sic] change of the right knee. X-ray of the right hip dated August 8, 2007 revealed no acute fractures or dislocations and moderate osteoarthritic changes of the right hip. Chest X-ray dated October 11, 2007 indicated osteoarthritic change of the thoracic spine.

(AR at 17.) The ALJ's statement that "radiology findings were generally mild" can not be squared with the subsequent evidence cited by the ALJ. The only "mild" radiology findings related to Plaintiff's right knee. X-rays of Plaintiff's right hip indicated "moderate" osteoarthritic changes. X-rays revealing other instances of osteoarthritis in Plaintiff's lumbosacral and thoracic spine were not qualified by their severity, e.g., mild, moderate or severe.

        Moreover, even assuming all Plaintiff's instances of osteoarthritis were mild, the ALJ did not explain how such findings undermined Dr. Stubhaker's, Dr. Buttan's and Dr. Fast's residual functional capacity findings. To properly offer a specific and legitimate reason for rejecting

treating or examining physician testimony, the ALJ must provide "a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof." *Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989). The ALJ discussed objective medical evidence, however, did not offer a "reasoned interpretation" of the meaning, nor did he explain how that medical evidence conflicted with physician testimony.

Of the four physicians to opine on Plaintiff's physical condition (one treating, one examining and two consulting), only one consulting physician opined Plaintiff could perform "light work."[1] It is unclear if the ALJ was correct in asserting Dr. Buttan found Plaintiff could perform "light work." Based on Dr. Buttan's lifting and carrying findings, as well as his opinion that Plaintiff "should be able to work with his hands like manipulate small tools or instruments or work on the computer or typewriter keyboard," Dr. Buttan's assessment is more accurately described as sedentary work. The ALJ also gave the state agency opinions "some weight," suggesting that both state agency opinions found Plaintiff could perform "light work," with some postural limitations. (AR at 20.) The ALJ mistakenly asserted both consulting physicians offered an opinion limiting Plaintiff to light work, however, only Dr. Wong's testimony supports this claim. Dr. Wong did not find plaintiff had any postural limitations. Dr. Fast, on the other land, limited Plaintiff to sedentary work.

The ALJ cannot reject the opinion of a treating or examining physician merely by stating in conclusory terms that the opinion is objectively unfounded. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715 (9th Cir.1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988)). Moreover, the opinion of a nonexamining physician - in

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

1  this case, Dr. Wong - cannot by itself constitute substantial evidence that justifies the rejection of
2  the opinions of either examining physicians or treating physicians. *Lester v. Chater*, 81 F.3d 821,
3  830-31 (9th Cir.1996).
4        The Ninth Circuit has repeatedly held that when a non-examining physician relies on the
5  same clinical findings as a treating or examining physician, but differs only in his or her
6  conclusions, the opinions of the non-examining physician do not constitute substantial evidence
7  unless the ALJ articulates why the non-examining physician's testimony should be accorded
8  more weight, and why the opinions are inconsistent with the record. *See, e.g., Orn v. Astrue,* 495
9  F.3d 625 (9th Cir. 2007) ("When an examining physician relies on the same clinical findings as a
10  treating physician, but differs only in his or her conclusions, the conclusions of the examining
11  physician are not 'substantial evidence'"); *Zamora v. Barnhart,* 105 Fed. Appx. 893 (9th Cir.
12  2004) ("when a non-examining physician's opinion conflicts with that of an examining physician,
13  a "nonexamining physicians' conclusion, with nothing more, does not constitute substantial
14  evidence, particularly in view of the conflicting observations, opinions, and conclusions of an
15  examining physician"); *Murray v. Heckler*, 722 F.2d 499, 501-502 (9th Cir.1983) ("In this case,
16  ... the findings of the non-treating physician were the same as those of the treating physician. It
17  was his conclusions that differed.... If the ALJ wishes to disregard the opinion of the treating
18  physician, he or she must make findings setting forth specific, legitimate reasons for doing so
19  that are based on substantial evidence in the record.")
20        Here, the ALJ did not discuss Dr. Wong's opinions specifically.  Rather, the ALJ
21  erroneously conflated and misstated Dr. Wong's opinions with the contradicting opinions of Dr.
22  Fast.  Moreover, the ALJ failed to articulate why Dr. Wong's testimony should be accorded more
23  weight than the testimony of Dr. Stubhaker, Dr. Buttan and Dr. Fast.  Lastly, the ALJ did not
24  explain why the opinions of Plaintiff's treating and examining doctors were inconsistent with the
25  Record.
26        A reviewing court may evaluate an agency's decision "only on the grounds articulated by
27  the agency." *Ceguerra v. Secretary*, 933 F.2d 735, 738 (9th Cir.1991) (When the decision of an
28  ALJ rests on a negative credibility evaluation, the ALJ must make findings on the record and

1  must support those findings by pointing to substantial evidence on the record.)  It is not for this
2  Court to justify the ALJ's ultimate decision by setting forth additional legal arguments. Instead, it
3  is the reasoning given in the ALJ's decision that must be closely examined.  The conclusory
4  reasons given by the ALJ cannot be reviewed because they are unexplained.

### 3. Scope of Remand

In *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir.2004), the Court stated that "the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* (citing *Harmon v. Apfel*, 211 F.3d 1172, 1174, 1178 (9th Cir. 2000)); *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (discussing Ninth Circuit cases that appeared not to follow the credit-as-true rule, and concluding that the court must have "some flexibility in applying the crediting as true theory"); *Vasquez v. Astrue,* 572 F.3d 586, 594 (9th Cir. 2009) (discussing a "split in authority" in the Ninth Circuit over whether the credit-as-true rule is mandatory or discretionary, but not resolving the conflict).

In this case, the Court does not find that crediting the doctors' opinions is justifiable. Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Here, it is not clear from the evidence in the record that the ALJ would have been required to find plaintiff disabled if the treating physician or any other physicians' opinions had been credited.  Each of the physicians opined as to different limitations.  The Court would be arbitrarily crediting one opinion over another opinion without administrative guidance that the limitations equated to disability. Therefore, the case must be remanded for further proceedings.

Additionally, even if the opinions of Dr.'s Stubhaker, Buttan and Fast were all credited, the vocational expert testimony in the Record is inadequate to make a disability determination. The questions posed to the vocational expert concerned combined mental and physical

impairments. *See,* AR at 49-58. The Court's decision herein finds error in the ALJ's evaluation of Plaintiff's physical impairments, but not Plaintiff's mental impairments. *See, supra,* Section III.B.3. Thus, there is inadequate vocational expert testimony to determine if, given certain limitations, plaintiff could perform jobs in the national economy. Without appropriate vocational expert testimony, this Court cannot credit testimony and make a finding of disability at step five in the sequential proceeding. The ALJ stated reasons, which could be viewed as specific and legitimate, but the findings are not fully explained. Thus, the Court exercises the flexibility in remand as articulated by *Connett* to remand for further consideration.

On remand, the ALJ will reevaluate Plaintiff's physical limitations and the medical opinion testimony related thereto. In determining Plaintiff's residual functional capacity, the ALJ will either credit the opinions of Dr.'s Stubhaker, Buttan and Fast, or in the alternative, the ALJ will explain why the opinions of these physicians are contradicted by objective medical evidence, and why the opinions of Dr. Wong should be accorded more weight than other treating, examining and consulting physicians. The Court will not order the ALJ to credit any of the doctor's findings as true on remand. The ALJ should reconsider all evidence in this case, pose the necessary questions to the vocational expert based on that evidence, and make a new determination, de novo, regarding Plaintiff's entitlement to benefits.

**4.     The ALJ's Evaluation of Medical Opinion Testimony Relating To Plaintiff's Mental Ailments**

The ALJ considered medical opinion testimony concerning Plaintiff's mental ailments from the following sources: (1) Plaintiff's treating physician, Dr. Enrique Abordor; (2) state agency examining physician, Dr. Roger Izzi; and (3) state agency reviewing physician, Dr. K. P. Morris.

Between May of 2007 and May of 2009, Dr. Abordo treated Plaintiff for various mental ailments. (AR at 212 - 472.) On December 2, 2009, Dr. Abordo submitted a Mental Impairment Questionnaire in support of Plaintiff's claim for disability benefits. (AR at 470-72.) Dr. Abordo diagnosed Plaintiff with bipolar disorder, NOS, PTSD and social phobia. (AR at 470.) Plaintiff's last GAF score was listed as 55/100. (AR at 470.) Dr. Abordo opined Plaintiff had

moderate restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and three repeated episodes of decompensation, each of an extended duration. (AR at 470.) The ALJ accorded "little weight" to Dr. Abordo's opinions for the following reasons:

> While Dr. Abordo's [sic] reported that he has seen the claimant from May 2007 to May 30, 2009, he does not indicate the frequency of visits. . . .[Dr. Abordo] checked off boxes indicating that he assessed the claimant's signs as "sleep disturbance, mood disturbance, emotional lability, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, intrusive recollections of a traumatic experience, and, persistent irrational fears." These terms are quite vague and not clarified or defined by Dr. Abordo. [Dr. Abordo] concluded [Plaintiff] had "marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and three repeated episodes of decompensation, each of extended duration. The evidence in the record overall does not support "marked" limitations in social functioning or concentration, persistence and pace. Further, according to the AXIS V GAF Scale, a GAF of 51 to 60 indicates moderate, not marked symptoms. Accordingly, Dr. Abordo's conclusion that the claimant's symptoms are marked and that the claimant experienced three episodes of decompensation is internally inconsistent with his finding a GAF of 55. Further, there is little support in the record for this conclusion. Finally, it does not reflect the conservative course of treatment given to the claimant for his mental impairments.

(AR at 18-19.)

On November 3, 2007, state agency examining physician Dr. Izzi performed a complete psychological evaluation of Plaintiff. (AR at 226-231.) Dr. Izzi diagnosed Plaintiff with a depressive disorder not otherwise specified and polysubstance in remission. (AR at 230.) At the conclusion of the examination, Dr. Izzi opined that Plaintiff was capable of performing simple repetitive tasks over an eight-hour period, was not likely to have problems getting along with peers or supervisors, was capable of responding to usual work session situations and dealing with changes in a routine work setting. (AR at 230-31.) The ALJ accorded this opinion "substantial weight because it is supported by the record overall." (AR at 20.)

On January 30, 2008, state agency reviewing physician K.P. Morris reviewed Plaintiff's medical records relating to his mental ailments, and provided a mental residual functional capacity assessment. (AR at 255-57.) Dr. Morris opined that Plaintiff has sufficient ability to complete simple instructions, follow directions without additional assistance, and to maintain adequate attention. (AR at 257.) Dr. Morris additionally opined Plaintiff had sufficient ability to

maintain appropriate behavior in the context of limited peer and public contact, was capable of accepting instructions and responding appropriately to feedback from supervisors. (AR at 257.) Dr. Morris further opined Plaintiff had sufficient ability to be aware of ordinary hazards, make simple decisions, and cope with the demands of a routine, entry-level position. (AR at 257.) The ALJ accorded Dr. Morris' opinion "substantial weight" because it was "supported by the record overall [and] generally consistent with [the ALJ's] findings." (AR at 20.)

The reasons articulated by the ALJ for discounting Dr. Abordo's opinion testimony are not specific and legitimate. The ALJ's statement that Dr. Abordo's "check-the-box" method for identifying Plaintiff's symptoms was vague and unclarified is not well-taken. The form submitted by Dr. Aborado is a standard form submitted by physicians in disability proceedings. Moreover, there is over 100 pages of treatment notes documenting these symptoms, and as well as the mental ailments believed to cause such symptoms. (AR at 211-222; 357-447.) Accordingly, it was improper for the ALJ to reject the presence of those symptoms for that reason.

The frequency with which Plaintiff visited Dr. Aborado is also not a specific and legitimate reason supported by substantial evidence in the record. While Dr. Aborado does not specifically state this frequency, the Record indicates Plaintiff saw Dr. Aborado on no less than nine occasions. (AR at 215, 217, 368, 411, 415, 419, 425, 431, 434.) Such a high frequency of visits does not support the ALJ's findings.

Furthermore, the records of these visits contradict the ALJ's finding of a "conservative course of treatment." On the contrary, the Record indicates Dr. Aborado tried several different medications, in varying doses, to treat Plaintiff's symptoms. *See, e.g.,* AR at 215 (On June 11, 2007, Dr. Aborado proscribed Lamicital for Plaintiff's Bipolar Disorder and PTSD); AR at 368 (On August 25, 2007, Dr. Aborado proscribed Concerta); AR at 431 (On January 19, 2009, Dr. Aborado proscribed Elavil at 50 mg); AR at 425 (On February 14, 2009, Dr. Aborado increased Plaintiff's Elavil proscription to 100 mg); AR at 411 (On May 20, 2009, Dr. Aborado proscribed Tegretol); AR at 467 (showing proscriptions of Actos-Plus, Glyboride, Neurotonin and Soma).

Lastly, the ALJ rejected Dr. Aborado's opinion that Plaintiff suffers from marked difficulties in maintaining social functioning, concentration, persistence, and pace because "there is little support in the record for this conclusion."  However, the only part of the Record cited by the ALJ is Plaintiff's GAF score of 55, which tends to indicate moderate symptoms.  (AR at 19.)

GAF scores range from 1–100.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4 ed.).  In arriving at a GAF Score, the clinician considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness.  Id.  A GAF score of 41 to 50 denotes "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting), OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Id.  A GAF score of 51–60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Id.  A GAF score of 61–70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  Id.

There is, however, no GAF score specifically correlating with "marked" symptoms.  The applicable regulations confirm that, "[w]here we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part 12.00(C) (citing 20 C.F.R. §§ 404.1520a, 416.920a).

Given the definition of a "moderate" GAF score between 51–60, as well as the above-stated definition of "marked", "it is not clear that a person could never simultaneously have "marked" impairments and [a moderate] GAF score." Atkinson v. Astrue, 2011 WL 4085414 (E.D. Cal. 2011).  Under the present circumstances, and ALJ is required "to explain

*how* these assessments are necessarily inconsistent with opining that the patient has "marked" impairments." *Atkinson v. Astrue,* 2011 WL 4085414 (E.D. Cal. 2011) (emphasis in original); *See also, Provencio v. Astrue* 2012 WL 2344072 (D. Ariz. 2012) ("Moreover, to the extent the ALJ rejected Dr. Wilcox's opinion as incompatible with the GAF scores, the ALJ failed to explain why a GAF score, a generalized assessment, superseded Dr. Wilcox's more precise opinions as to Plaintiff's ability to work. It is important to keep in mind that, as a global reference intended to aid in treatment, 'a GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work.")  Courts "have recognized that a given GAF score is not necessarily "inconsistent" with treating physician opinions simply because an ALJ summarily concludes as much." *Atkinson v. Astrue,* 2011 WL 4085414 (E.D. Cal. 2011); *see also, Gutilla v. Astrue* 2010 WL 5313318 (S.D. Cal. 2010) ("[o]ther than stating that the GAF score of fifty is inconsistent with [the treating psychiatrist's] assessment, the ALJ does not give any specific reason for that conclusion.  He has not explained how the doctor's assessment conflicts with the GAF score").

Here, the ALJ failed to explain *how* Plaintiff's "moderate" GAF score is inconsistent with Dr. Aborado's assessment that Plaintiff had "marked" impairments.  Without more, Plaintiff's GAF score is not a specific and legitimate reason based on substantial evidence in the record to reject Dr. Aborado's residual functional capacity assessment.

Nonetheless, by relying on the independent clinical findings of Dr. Izzi in making his residual functional capacity assessment, the ALJ's rejection of Dr. Aborado's conclusions were made for a specific and legitimate reason based on substantial evidence in the Record.  *See, Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007) ("when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence'), citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985); accord *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995); *See also, Plambeck v. Astrue,* 2009 WL 2501359 (E.D. Cal. 2009) ("The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician,

16

where it is based on independent clinical findings that differ from those of the treating physician.") Additionally, the contradicting opinions of consulting physician Dr. Morris amounts to substantial evidence when supported by the independent clinical findings of an examining physician. *See Plambeck v. Astrue,* 2009 WL 2501359 (E.D. Cal. 2009) ("The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings"), citing *Andrews v. Shalala,* 53 F.3d at 1041.

Accordingly, the ALJ's rejection of Dr. Aborado's conclusions, by relying on the opinions of Dr. Izzi and Dr. Morris, was based on specific and legitimate reasons, and his residual functional capacity assessment of Plaintiff's mental limitations was based on substantial evidence in the Record.

**C.     The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony**

**1.     Legal Standard**

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281.  The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen,* 80 F.3d at 1284; *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007).

The ALJ's credibility evaluation is supported by clear and convincing reasons. First, the ALJ noted inconsistencies between Plaintiff's testimony and previous statements he made to doctors. (AR at 17-18.) For example, despite Plaintiff's testimony that his diabetes was "out of control," he previously reported to Dr. Buttan that his diabetes and hypertension had been controlled with medications for the last few years. (AR at 17-18, 37, 224.) Furthermore, Plaintiff testified that he could only walk a couple of blocks before needing to sit down, but treatment records from 2009 documented that he walked about a half-mile per day. (AR at 18, 44, 415.) Despite Plaintiff's testimony of incapacitating pain in his back, knees, arms and hands, Plaintiff did not mention these problems to the consultative examiner. Rather, Plaintiff only mentioned diabetes and blood clots as his medical problems to the consultative examiner. (AR at 227.) Finally, Plaintiff testified that his medications resulted in nausea and vomiting 2 or 3 days per week. (AR at 18, 46.) Yet, in a questionnaire he completed in January 2008, he reported having no nausea, vomiting, or diarrhea; and his primary care physician reported that Plaintiff had no significant side effects from medication. (AR 437, 474.) These inconsistent statements were a valid consideration, as they undermined Plaintiff's credibility. (AR at 17.) *See Bunnell,* 947 F.2d at 346 (inconsistent statements are one factor that can be used in determining a claimant's credibility).

The ALJ also noted that Plaintiff stopped working in 2003, not due to his impairments, but because he got into an argument with his employer and then relapsed on drugs. (AR 18, 226.) It was proper for the ALJ to consider the reason Plaintiff was no longer working his past job. (AR at 18.) *See Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001) (the ALJ properly considered that claimant was out of work because he was laid off and not because of his allegedly disabling injuries when assessing claimant's credibility).

Lastly, the ALJ noted that Plaintiff's reported dysfunction was inconsistent with his daily activities. (AR 18.) Plaintiff reported limitations in walking and showering, yet he maintained the capacity to perform some household chores, including feeding the dog, vacuuming, emptying the trash, shopping, and running errands. (AR 18, 157, 162, 164.) Although Plaintiff's activities did not necessarily suggest he could perform a full range of light work, they demonstrated that he could do more than he claimed. (AR 17, 43-45.) *See Valentine v. Commissioner, Soc. Sec. Admin.,* 574 F.3d 685, 693 (9th Cir. 2009) (finding that the ALJ properly considered the claimant's activities in rejecting his credibility; although the claimant's activities did not suggest he could return to his past work, they did demonstrate that the claimant had greater functional capacity than he acknowledged in his written statements and testimony).

Accordingly, the ALJ's credibility finding was based on clear and convincing reasons based on substantial evidence in the Record.

## IV.   CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 14) is GRANTED;
2. The Commissioner's cross-motion for summary judgment (Dkt. No. 18) is DENIED;

/////

/////

3. The decision of the ALJ is REVERSED and the case remanded to the Commissioner for further proceedings consistent with this Order;

4. The Clerk of Court enter judgment in favor of Plaintiff.

IT IS SO ORDERED.

Dated: **December 6, 2012**     /s/ **Barbara A. McAuliffe**
UNITED STATES MAGISTRATE JUDGE